

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG L. WRIGHT, special
Fiduciary for A.S., as protected minor,

        Plaintiff,

v.

PNC FINANCIAL SERVICES
GROUP, INC. AND STACI
SUTHERBY-HURD,

        Defendants.

_____/

Case No. 13-15291

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANT PNC FINANCIAL SERVICES GROUP, INC.'S MOTION FOR JUDGMENT (ECF NO. 32) AND DENYING PLAINTIFF'S CONDITIONAL REQUEST TO AMEND

Now before the Court is Defendant PNC Financial Services Group, Inc.'s Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 32). Plaintiff Craig L. Wright, as a special fiduciary duty for A.S., filed a response to this motion on February 18, 2015.[1] (ECF No. 34). Thereafter, Defendant filed a reply on March 9, 2015. (ECF No. 37).

A hearing on this motion was held on June 24, 2015. For the following reasons the Court GRANTS Defendant's Motion for Judgment on the Pleadings and DENIES Plaintiff's conditional request to amend.

### I. BACKGROUND

_____

[1] While both parties refer to the protected minor, A.S., by his full names in their briefing, the Court, in accordance with Federal Rule of Civil Procedure 5.2, shall refer to the minor only by his initials.

On December 10, 2010, Nathan J. Sutherby passed away. (Compl. at ¶12). Sutherby, as an employee of General Motors had an employer provided group term life insurance policy through MetLife which named his son, A.S., as beneficiary. (*Id.*). On January 25, 2011, the Genesee County Probate Court appointed Defendant Staci Sutherby-Hurd, A.S.'s mother, conservator for A.S. (*Id.* at ¶¶ 12-15). Defendant Sutherby-Hurd was represented by attorney Howard T. Linden. (*Id.*).

The Order regarding the appointment of conservator and a letter of conservatorship issued to Defendant Sutherby-Hurd stated the following in all capital letters: "ANY FUNDS RECEIVED ON BEHALF OF SAID MINOR SHALL BE PLACED IN A RESTRICTED ACCOUNT AND PROOF FILED WITH THE COURT." (*Id.* at ¶¶ 16-17).

In October 2011, MetLife mailed Defendant Sutherby-Hurd a check in the amount of $176,997.79, payable to "Estate of [A.S.], a minor, Staci Sutherby-Hurd Conservator" which represented the life insurance proceeds on the life of Nathan F. Sutherby. (*Id.* at ¶ 23). Plaintiff avers that Defendant Sutherby-Hurd then negotiated the check at Defendant PNC Financial Services Group, Inc. ("PNC Bank") but did not deposit the check into a restricted account as ordered by the Probate Court through its Letter of Conservatorship or its Order. (*Id.* at ¶ 25). Plaintiff alleges that Defendant PNC Bank allowed Defendant Sutherby-Hurd to "negotiate and deposit the Metropolitan Life Insurance check into an account not titled in the name of Estate of [A.S.], a minor, Staci Sutherby-Hurd Conservator." (*Id.* at ¶ 42). Additionally, or in the alternative, Plaintiff alleges that Defendant PNC Bank failed to verify Defendant Sutherby-Hurd's legal authority as "being the court appointed Conservator, and/or any restrictions on her authority such as having said funds deposited into a restricted account." (Compl. at ¶ 41).

Thereafter, Defendant Sutherby-Hurd "having never deposited the MetLife, Inc. life

2

insurance proceeds into a restricted account, thereafter used said funds in the amount of $110,408.36,

at her discretion to purchase both real and personal property" including a single family home, an

automobile, various home improvements, funeral expenses for Nathan Sutherby, and "video games,

pets, computers, a phone, a golf cart, a television, a mini-bike, and furnishings" without Probate

Court approval. (*Id.*).

Plaintiff Craig Wright, as special fiduciary on behalf of minor A.S., filed the present action

in Genesee County Probate Court in November 2013 naming MetLife, PNC Bank, Staci Sutherby-

Hurd, and Howard Linden as defendants. (*See* Compl.). Based on the fact that the life insurance

policy at issue was part of an employee welfare benefit plan as defined by the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, MetLife removed the action to

this Court pursuant to 28 U.S.C. § 1441(b). (ECF No. 1, Removal).

On February 19, 2014, Plaintiff and MetLife stipulated to the dismissal of claims against

MetLife with prejudice. (ECF No. 13). The Court then dismissed MetLife pursuant to the

stipulation. (ECF No. 16). Then Plaintiff filed a motion to remand the action to state court. (ECF

No. 15). On February 21, 2014, the Court dismissed Defendant Linden pursuant to a stipulation.

(ECF No. 17).

This Court then referred Plaintiff's motion for remand to Magistrate Judge Whalen. On

September 17, 2014, Magistrate Judge Whalen issued a Report and Recommendation concluding

that the Court should deny Plaintiff's request for remand based largely on "Plaintiff's forum

shopping tactics". (ECF No. 22). No parties objected to the Report and Recommendation, and this

Court adopted the same on October 14, 2014. (ECF No. 23).

Thereafter, Plaintiff requested and received a Clerk's Entry of Default against Defendant

3

Staci Sutherby-Hurd. (ECF Nos. 30, 31). On February 27, 2015, Plaintiff requested a Clerk's Entry

of Judgment by Default with affidavit of sum certain as to Defendant Sutherby-Hurd. (ECF No. 35).

This request was granted on March 2, 2015. (ECF No. 36).

The last (and now lone) Defendant PNC Bank filed the present motion for judgment on the

pleadings on February 11, 2015. (ECF No. 32). Plaintiff filed his response on February 18, 2015.

(ECF No. 34). Defendant PNC Bank filed its reply on March 9, 2015. (ECF No. 37).

## II. STANDARD OF REVIEW

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)

are analyzed under the same de novo standards as motions to dismiss pursuant to Rule 12(b)(6)."

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)).

Indeed, "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same ..."

*Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). Therefore, "all well-pleaded material

allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev.

Co. v. Chesapeake*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted). The Sixth Circuit has

explained that:

> Although a complaint need not contain "detailed factual allegations," it does require
> more than "labels and conclusions" or "a formulaic recitation of the elements of a
> cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a
> complaint survives a motion to dismiss if it "contain[s] sufficient factual matter,
> accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.
> Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). And, "[a] claim has facial
> plausibility when the plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct alleged." *Hensley
> Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S.Ct.

4

at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

The Court notes Defendant PNC Bank in its Motion for Judgment on the Pleadings makes certain references to matters and facts that are outside the pleadings. Specifically, Defendant PNC Bank refers to the Probate Court Order stating that Plaintiff "shall file the necessary complaint to begin the process of recuperating [sic] the missing conservatorship funds. Attorney Wright shall name as Defendants MetLife, PNC Bank, Staci Sutherby-Hurd, and Attorney Howard T. Linden." (Def.'s Br., Ex. A). This Order can be considered by the Court because it is a public document. It is well settled that in a motion to dismiss, a court may also rely upon matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that in deciding a motion to dismiss a court may consider, "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."). To the extent that Defendant PNC Bank makes statements regarding the type of account Defendant Sutherby-Hurd opened with the MetLife insurance proceeds, such facts are outside the record. (*See* Def.'s Br. at 2, n. 1). Therefore, the Court does not rely upon the type of account opened by Defendant Sutherby-Hurd in its analysis of the present action.

### III. ANALYSIS

A.    Claim against Defendant

The current complaint in this action lists a single cause of action against Defendant PNC Bank, which is entitled "Breach of a Fiduciary Duty". Plaintiff asserts in his response to the motion

for judgment that Defendant PNC Bank was wrong in treating the claim as one for "mere breach of fiduciary duty." (Pl.'s Resp. at 5). Plaintiff goes on to contend that "none of the paragraphs of Count III allege breach of fiduciary duty. Plaintiff concedes that the heading of Count III states 'Breach of Fiduciary Duty'; however, the heading is not part of the plaintiff's claims." (*Id.*). Plaintiff then argues that Defendant breached a duty to Plaintiff but "not specifically a fiduciary duty" and then cites to Mich. Comp. Laws §§ 440.3307 and 440.3420 (conversion) or § 700.5422. (*Id.*). The Court addresses claim each in turn.

      1.     Breach of Fiduciary Duty

Although somewhat murky, it appears from Plaintiff's response briefing that he could still be asserting a breach of fiduciary duty (in addition to other unspecified duties) as a basis for a claim against Defendant PNC Bank.

"Under Michigan law, fiduciary duties arise from 'the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.'" *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1345 (E.D. Mich. 2011) (quoting *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich. App. 290, 294 (1981)); *see also Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 196 (1992) ("A fiduciary relationship arises from the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another."). "A person in a fiduciary relation[ship with] another is under a duty to act for the benefit of the other with regard to matters within the scope of the relationship." *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 865 (E.D. Mich. 2013) (Edmunds, J.) (quoting *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 581 (1999)). Relationships that typically give rise to such a duty are "trustees to

6

beneficiaries, guardians to wards, attorney to clients, and doctors to patients." *Portage Aluminum*,

106 Mich. App. at 294. Whether a relationship of "repose trust and confidence" exists such that a

fiduciary duty arises outside the well-recognized fiduciary relationships is a question of fact. *Duke*,

811 F. Supp. 2d at 1345 (citation omitted); *accord Ford Motor*, 945 F. Supp. 2d at 865 (citing

*Ulrich*, 192 Mich. App. 194, and *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107

Mich. App. 509, 515 (1981)). However, "Michigan courts, though, have been reluctant to extend

the cause of action for breach of fiduciary duty beyond the traditional context." *Ford Motor*, 945

F. Supp. 2d at 865 (citation and quotation marks omitted).

In the present case, it is clear that there is a well-recognized fiduciary duty between

Defendant Sutherby-Hurd and A.S., as conservator and protected minor. Yet, it appears from the

face of Plaintiff's pleadings (although perhaps not Plaintiff's briefing) that Plaintiff is asserting that

Defendant PNC Bank was a fiduciary to A.S. (or Defendant Sutherby-Hurd) based on the fact that

Defendant PNC Bank was the depository bank that negotiated the life insurance check endorsed to

both A.S. as a minor and Defendant Sutherby-Hurd as conservator. However, "Michigan courts do

not impose a fiduciary duty on banks arising from ongoing business relations" because to do so

"would be too radical a departure from well-established, traditional banking laws." *The Glidden Co.*

*v. Janernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998) (citing *Ulrich*, 192 Mich. App. at 200; and

*Portage Aluminum*, 106 Mich. App. at 294-96) (examining the relationship between a borrower and

a lender). Plaintiff has alleged no other facts regarding the relationship between Defendant PNC

Bank and A.S. or Defendant Sutherby-Hurd. Significantly, Plaintiff has not alleged that there was

a contract or statute from which a fiduciary duty arose, or that Defendant PNC Bank was acting as

a trustee, or that there was *any relationship* outside of the general business relationship between

7

Defendant PNC Bank, A.S., or Defendant Sutherby-Hurd that would trigger or implicate "the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another." *Ulrich*, 192 Mich. App. at 196.

Plaintiff has failed to allege any facts that could lead this Court to draw the reasonable inference that there was a relationship of a fiduciary nature between Defendant PNC Bank and A.S., or Defendant Sutherby-Hurd. Indeed, Plaintiff's briefing appears to contradict the complaint that a fiduciary duty may have existed and merely asserts that Defendant PNC Bank owed A.S. some other duty arising from a different statute. Specifically, Plaintiff's argument appears to be that Defendant PNC Bank may have converted the life insurance proceeds under Mich. Comp. Laws § 440.3420 and was *on notice* of Defendant Sutherby-Hurd's breach of *her* fiduciary duty to A.S. (Pl.'s Resp. at 6).[2]

For these reasons, Plaintiff's claim for a breach of fiduciary duty must be dismissed for failure to state a claim upon which relief can be granted.

2.      Violation of Mich. Comp. Laws § 440.3307

Plaintiff also asserts in his complaint that Defendant PNC Bank "violated provisions of the Uniform Commercial Code 440.3307(2)(b)(iii), by failing to recognize Staci Sutherby-Hurd's fiduciary capacity when negotiating the instrument for the personal benefit of the fiduciary." (Compl. ¶ 44). Defendant PNC Bank argues that Mich. Comp. Laws § 440.3307 does not create a

---

[2] Plaintiff's argument that Count III is actually a claim that Defendant PNC Bank "breached a duty" does not appear to be a claim of general negligence against Defendant PNC Bank. Indeed, Plaintiff clarifies in his response briefing that the breach of the unspecified duty would give rise to liability under either Mich. Comp. Laws §§ 440.3307 and 440.3420 (conversion) or § 700.5422. Therefore, the Court does not address the Plaintiff's "breach of fiduciary duty" in the context of a "negligence" claim.

separate cause of action but rather sets forth the rules dictating when a taker of an instrument would

lose its holder in due course status and make it vulnerable to other causes of action (such as

conversion or rescission).

Section 440.3307 of Michigan's Uniform Commercial Code entitled "Notice of breach of

fiduciary duty", states in relevant part:

> (2)  If (i) an instrument is taken from a fiduciary for payment or collection or for
> value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and
> (iii) the represented person makes a claim to the instrument or its proceeds
> on the basis that the transaction of the fiduciary is a breach of fiduciary duty,
> the following rules apply:
>
>> (a) Notice of breach of fiduciary duty by the fiduciary is notice of the
>> claim of the represented person.
>>
>> (b) In the case of an instrument payable to the represented person or
>> the fiduciary as such, the taker has notice of the breach of fiduciary
>> as such, the taker has notice of the breach of fiduciary duty if the
>> instrument is (i) taken in payment of or as security for a debt known
>> by the taker to be the personal debt of the fiduciary, (ii) taken in a
>> transaction known by the taker to be for the personal benefit of the
>> fiduciary, or (iii)j deposited to an account other than an account of the
>> fiduciary, as such, or an account of the represented person.

MICH. COMP. LAWS § 440.3307(2). Comment 2 to this provision of the UCC makes clear that

"[u]nder Section 3-306, a person taking an instrument is subject to a claim to the instrument or its

proceeds, unless the taker has rights of a holder in due course. ... Section 3-307 states rules for

determining when a person taking an instrument has notice of the claim which will prevent assertion

of rights as a holder in due course. It also states rules for determining when a payor bank pays an

instrument with notice of a breach of fiduciary duty". MICH. COMP. LAWS § 440.3307, cmt. 2.

Significantly, the case law relating to this provision of Michigan's UCC also elucidates that

§ 440.3307 does not provide a cause of action but merely sets forth rules regarding when a taker of

an instrument is on notice of a breach of fiduciary duty.  For example, in *First Independence Capital Corp. v. Merrill Lynch Business Finanical Servs., Inc.*, 181 F. App'x 524 (6th Cir. 2006), an appeal from the bankruptcy court, the Sixth Circuit Court of Appeals rejected the debtor's argument that § 440.3307 created an independent cause of action for rescission.  *Id.* at 527.  The Sixth Circuit explained, "Michigan has adopted Article 3 of the Uniform Commercial Code. ... Sections 440.3302, 440.3306, and 440.3307 define who may qualify as a holder in due course."  The Sixth Circuit reasoned that even if one assumed without deciding that Merrill Lynch was a

> taker of the instruments in this case and that Merrill Lynch cannot claim the status of holder of in due course.  This would deprive Merrill Lynch of a defense to First Independence's claim for rescission, but First Independence's claim can survive only "[t]o the extent that [it is] permitted by other law."  Mich. Comp. Laws § 440.3202.

*Id.* at 527 (noting that "Section 3-202 gives no right that would not otherwise exist.  The section is intended to mean that any remedies afforded by other law are cut off only by a holder in due course.").  The Sixth Circuit then rejected the debtor's argument that § 440.3307 or § 440.3306 provided a separate cause of action for rescission noting "[t]hese sections serve only to invalidate a potential *defense* [of holder in due course status]."[3]  *Id.* at 527 (emphasis in original and collecting cases finding that these sections do not provide an independent cause of action.).

Similarly, in *Grand Rapids Auto Sales, Inc. v. MBNA Am. Bank*, 227 F. Supp. 2d 721 (W.D. Mich. 2002), the district court analyzed whether the defendant bank was a holder in due course and observed that "[t]he rules for determining whether a person taking an instrument has notice of the

---

[3] Section 440.3306 provides that "[a] person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds.  A person having rights of a holder in due course takes free of the claim to the instrument."

claim of a represented person that its fiduciary has committed a breach of fiduciary duty are set forth in UCC 3-307." *Id.* at 729. The district court went on to analyze § 440.3307, finding that even assuming that the party qualified as a fiduciary, the plaintiff "cannot show that MBNA had notice either of Stewart's fiduciary status or of her breach of fiduciary duty." *Id.* As a result, the district court found that the plaintiff could not defeat the bank's holder in due course status.

Plaintiff argues that the Michigan Court of Appeals has held that § 440.3307 is a separate cause of action and relies upon *New Properties, Inc. v. George D. Newpower, Inc.*, No. 259932, 2006 WL 2632310 (Mich. Ct. App. Sept. 14, 2006). In *New Properties*, the Michigan Court of Appeals affirmed the trial court's finding that the defendant bank was liable for conversion. *Id.* at * 5, 10-11. In so finding, the Michigan Court of Appeals agreed that the "Bank is liable under Article III of the UCC" and went on to recite the provisions of § 440.3307 and then concluded that the defendants had "actual knowledge and notice that Newpower was breaching his fiduciary duty to the Kitchens. Thus, the Bank, as taker, knew of the breach of fiduciary duty and was properly held liable by the trial court." *Id.* at *11. While the language of the Michigan Court of Appeals in this unpublished opinion is loose, the underlying facts and posture of the case make clear that the defendant bank was not being held liable pursuant to § 440.3307 but rather the Michigan Court of Appeals was affirming that the defendant bank was "properly held liable" for conversion by the trial court because the defendant bank had notice of the breach of the fiduciary duty and could not claim status as holder in due course. Accordingly, the Court finds that *New Properties* does not support Plaintiff's argument that § 440.3307 gives rise to a separate cause of action.

Finally, Plaintiff's reliance on *C-Wood Lumber Co., Inc. v. Wayne County Bank*, 233 S.W.3d 263 (Tenn Ct. App. 2007) is also misplaced. In this Tennessee state court opinion, which does set

11

forth a very detailed and interesting background of the Uniform Commercial Code and its adoption in Tennessee, the state court also very clearly contradicts Plaintiff's position that UCC 3-307 can give rise to a separate cause of action. Indeed, the state court explains that "Section 3-307 [] invites payees of checks embezzled by the payee's fiduciary to sue the depository bank for conversion under Tenn. Code Ann. 47-3-420 [the equivalent to UCC 3-402]." *Id.* at 277. The state court went on to find that "the bank was not a holder in due course with regard to these deposits because it had notice under Tenn. Code Ann. 47-3-307(b)(2)(iii) that Ms. McWilliams was breaching her fiduciary duty to C-Wood when she made them." *Id.* at 288. Accordingly, despite Plaintiff's reliance on *C-Wood*, there is nothing in its reasoning or holding that support the argument that § 440.3307 creates a separate cause of action that can be asserted against a taker.

In sum, all of the cited case law is consistent in finding that § 440.3307 creates a defense to a taker's assertion that they are a holder in due course. If a person is found *not to be a holder in due course then and only then* would they be "subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds." MICH. COMP. LAWS § 440.3306.

3. Conversion pursuant to §§ 440.3307 and 440.3320

Plaintiff also argues that he has set forth a claim for conversion pursuant to §§ 440.3307 and 440.3320 against Defendant PNC Bank, apparently, upon the premise that his Complaint only generally alleged a breached duty and such a duty could have arisen from the aforementioned statutes. Even assuming Plaintiff's complaint could be read to include this claim, Plaintiff's claim fails.

Plaintiff argues that Defendant PNC Bank converted the MetLife insurance check when it

12

made payments to Defendant Sutherby-Hurd "although Staci was not entitled to enforce that instrument or receive payment." (Pl.'s Resp. at 11). Plaintiff then appears to reason that Defendant PNC Bank was on notice pursuant to § 440.3307 of Defendant Sutherby-Hurd's breach of fiduciary duty to A.S. when she deposited the Metlife check into the account. Therefore, Plaintiff argues that Defendant PNC Bank is subject to a claim of conversion because it has lost its holder in due course status.

Defendant PNC argues that because Defendant Sutherby-Hurd was a payee designated on the Metlife check she is a "person entitled to enforce the instrument" under Mich. Comp. Laws § 440.3420(1). Section 440.3240, provides in relevant part that

> the law applicable to conversion of personal property applies to instruments. An instrument is also converted if it taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or co-payee.

MICH. COMP. LAWS § 440.3420(1).

Plaintiff's contention that he has a valid claim of conversion pursuant to § 440.3420 against Defendant PNC Bank overlooks the fact that the check was endorsed to "Estate of [A.S.], a minor, Staci Sutherby-Hurd, Conservator." In fact, Plaintiff goes so far as to contend the check "was not written to Staci, but to the Estate of [A.S.]". (Pl.'s Resp. at 11). However, despite Plaintiff's claims that "Staci was not entitled to enforce that instrument or receive payment" the face of the check clearly indicates that Defendant Sutherby-Hurd could enforce the instrument. *See* MICH. COMP. LAWS § 440.3110 (stating that an instrument payable to "a trust, an estate, or a person described as

13

trustee or representative of a trust or estate, the instrument is payable to the person to whom the account is payable .... [a] person described as agent or similar representative of a named or identified person, the instrument is payable to the represented person, the representative, or a successor of the representative."). Additionally, the instrument was payable to Defendant Sutherby-Hurd and the estate of A.S. "alternatively" rather than "not alternatively" such that both signatures were not needed to enforce the check. *See e.g. Parmar Enter., Inc. v. Huntington Banks of Mich.*, 228 Mich. App. 727, 733-34 (Mich. Ct. App. 1998) (noting that "an instrument made payable to two or more persons not alternatively, is payable to all of them. When the word "and" separates the names of two payees on an instrument, the instrument is payable jointly and not alternatively.").

Finally, Defendant PNC Bank notes § 700.5423 of the Estates and Protected Individuals Code sets forth an enumerated list of powers which a conservator possesses which includes the powers to: "[c]ollect, hold, or retain estate property" and "[d]eposit estate money in a state or federally insured financial institution including one operated by the conservator." MICH COMP. LAWS § 700.5423(2)(a),(f). It is undisputed that Defendant Sutherby-Hurd was appointed conservator of the estate of A.S. and therefore, pursuant to § 700.5423(a) and (f), she had the power deposit and enforce the MetLife check.

Given all of these facts, Plaintiff's claim that Defendant PNC Bank is liable for the conversion of the MetLife check fails as a matter of law because the check itself was made payable to Defendant Sutherby-Hurd and she was entitled to enforce the same.[4]

---

[4] Because the Court finds that a claim of conversion cannot stand, the Court does not address whether pursuant to § 400.3307 Defendant PNC Bank would have been on notice of the breach of fiduciary duty when (or if) Defendant Sutherby-Hurd deposited the MetLife check. The Court further notes that Plaintiff did not allege specifically what type of account Defendant Sutherby-Hurd opened with the MetLife funds. While undisputed in the briefing and oral

14

4.    Violation of Mich. Comp. Laws § 700.5422

Plaintiff also asserts that the allegations in his complaint "give rise to liability" under the Michigan Estates and Protected Individuals Code § 700.5422. (Pl.'s Resp. at 12). As an initial matter, the Court finds that Plaintiff's complaint clearly fails to state any claim against Defendant PNC Bank arising from a breach of § 700.5422. Plaintiff fails to cite any allegation in the complaint that implicates or refers to § 700.5422, and in fact, the statute is not mentioned whatsoever. Therefore, Plaintiff has failed to allege any facts that would allow this Court to "draw the reasonable inference that the defendant is liable" for such a breach. *See Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012) (citation omitted).

Assuming, however, that Plaintiff had asserted such a claim, the Court finds that his claim would still fail. Section 700.5422 of the Michigan Estates and Protected Individuals Code, provides in relevant part that:

(1)    A person who in good faith either assists or deals with a conservator for value in a transaction ... is protected as if the conservator properly exercised the power. ...the fact that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of a power or the propriety of its exercise, but a restriction on a conservator's powers that is endorsed on letters as provided in section 5427 is effective as to third persons.   A person is not bound to see the proper application of estate property paid or delivered to a conservator.

(2)    The protection expressed in this section extends to a procedural irregularity or jurisdictional defect that occurs in a proceeding leading to the issuance of letters and is not a substitution for protection provided by a comparable provision of the law relating to a commercial transaction or to simplifying a transfer of securities by a fiduciary.

---

argument that Defendant Sutherby-Hurd opened a "UTMA" or Uniform Transfer to Minor Act account in the name of A.S. with the MetLife check (rather than a personal account in her name only), that fact is outside the pleadings and as stated previously, was not relied upon by the Court in analyzing Plaintiff's claims.

MICH. COMP. LAWS § 700.5422.

Plaintiff argues that the letter of conservatorship or order regarding appointment of conservator is effective as to Defendant PNC Bank such that its "violation of those restrictions on the type of account into which the MetLife check could be deposited; that is the crux of the claim against PNC." (Pl.'s Resp. at 12). Plaintiff cites no authority to support his claim.

The Court notes that while there is no Michigan case law or authority directly addressing § 700.5422, the Michigan Court of Appeals did analyze a single case regarding the predecessor statute, § 700.483, which set forth nearly identical language in *Sable v. Manufacturers National Bank of Detroit (In re Thomas Estate)*, 211 Mich. App. 594 (1995). In *In re Thomas Estate*, the Michigan Court of Appeals held that the depository bank was jointly and severally liable for any misappropriation of funds when estate assets were released to the guardian after expiration of the final letter of authority when the bank accepted "the funds along with the letter of authority, which explicitly restricted Goodhue's authority, [therefore] respondent was responsible for maintaining the money in accordance with the letters of authority issued by the Macomb County Probate Court." *Id.* at 601-02. Significantly, the Michigan Court of Appeals rejected the bank's argument that it was "without actual knowledge" because there was no claim that the bank was not in possession of the letter of authority in its files and a reasonable inquiry would have "discovered" the letters. *Id.* at 601.

In contrast to *In re Thomas Estate*, there is no allegation in the present case that Defendant PNC Bank was ever in possession of the letter of conservatorship or order regarding appointment of conservator. Therefore, the Court finds that assuming Plaintiff's complaint set forth a statutory claim pursuant to § 700.5422, such a claim fails where there is no allegation that Defendant PNC Bank had any knowledge of the documents that restricted Defendant Sutherby-Hurd's power as

16

conservator.

B.     Request to Amend

In his response brief and during oral argument Plaintiff has conditionally requested "to state more clearly a cause of action against PNC Bank under MCL 440.3307 and MCL 440.3420 as well as MCL 700.5422." (Pl.'s Resp. at 12-13).  Defendant PNC Bank argues that Plaintiff should not be allowed to amend his complaint because such attempts would be futile and extremely prejudicial because discovery has closed.

Pursuant to Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course 21 days after service, or if the pleading is one to which a responsive filing is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f) whichever is earlier. FED. R. CIV. P. 15(a)(1).  Otherwise, a party must move the court or receive the opposing party's consent to amend a complaint. FED. R. CIV. P. 15(a)(2).  Leave to amend must be freely given when justice so requires.  *Id.*  However, leave to amend "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).  A motion to amend can only be denied as futile if the complaint as amended could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The Court finds the lateness of Plaintiff's request to amend in the present case is without excuse as Magistrate Judge Whalen noted in his September 2014 Report and Recommendation that Plaintiff's complaint did not make any claims implicating the Michigan Estates and Protected Individuals Code.  (ECF No. 22, at 6).  Despite this forewarning which occurred prior to the

17

discovery plan being filed, Plaintiff waited until faced with a motion for judgment on the pleadings to seek to amend his complaint, and only then has sought to amend "in the alternative". The Court finds that the timing of the request is also extremely prejudicial to Defendant PNC Bank as discovery has since closed. Additionally, Plaintiff has not filed a separate motion to amend, nor has Plaintiff provided any additional factual allegations that he would submit through an amended complaint. *See Lewis v. Wheatley*, 528 F. App'x 466, 469 (6th Cir. 2013) (affirming the district court's denial of a request to amend as futile when the plaintiffs requested to amend a complaint in their response to a motion to dismiss, failed to file a separate motion "but sought such relief only in the alternative", and did not provide "any additional factual allegations that they would submit in an amended complaint".). Finally, and significantly, the Court finds that Plaintiff's request to amend would be futile as addressed *infra*.

Accordingly, the Court denies Plaintiff's very late and conditional request to amend.

### IV. CONCLUSION

Given all these facts the Court GRANTS Defendant's Motion for Judgment on the Pleadings (ECF No. 32) and DENIES Plaintiff's conditional request to amend.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:    **JUL 3 1 2015**

18